# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN J., INC., for itself and for and to the use of David Fenton, | Civil No. 1:14-CV-474 |
| | (Chief Judge Conner) |
| Plaintiff | |
| | (Magistrate Judge Carlson) |
| v. | |
| LANDMARK AMERICAN INSURANCE COMPANY and ENGLE MARTIN & ASSOCIATES | |
| Defendants | |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

The above-captioned action, which arises under the Court's diversity jurisdiction, involves an insurance coverage dispute between an insured, his insurance company, and an independent claims adjuster, who examined a policy claim brought by the plaintiff for storm damage, and found that the claim entailed pre-existing conditions on the insured premises prior to the storm. In this factual scenario, we are asked to consider whether the actions of the claim adjuster constituted a tortious interference with the contractual relationship between the insured and the insurance company.

Finding that these actions by the claims adjuster do not rise to the level of tortious interference with this insurance contract since the adjuster's "job was to investigate and report to [the insurance company] on the cause of loss", Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 731 (8th Cir. 2011), we conclude that a claim of tortious interference with a contractual relationship does not lie here, and recommend dismissal of this claim.

## II.     Statement of Facts and of the Case

The well-pleaded facts in this case can be simply stated:  The plaintiff was a lessee who held an option to purchase a property in Monroe County, Pennsylvania. (Doc. 18, ¶4.)  This real estate was insured through the defendant, Landmark American Insurance Company.  (Id., ¶5.)  The policy listed the plaintiff, Steven J., Inc.,  as a lienholder on this insurance policy.

According to Steven J., in October 2012, the property was heavily damaged in a storm.  (Id., ¶7.)  Steven J., submitted a loss claim on the property to Landmark, and Landmark engaged Engle Martin & Associates to review this claim.  (Id., ¶¶ 8-10.) Steven J., then alleges that the claim was wrongfully denied by Landmark on the basis of an report by Engle Martin, the claims adjuster, which incorrectly concluded that the claim on the insured property involved pre-existing damage that had not been caused by the storm.  (Id., ¶¶10-15.)  Alleging that the claims adjuster's report was

wrongfully withheld from the plaintiff, and reached an outrageously erroneous conclusion, Steven J., filed this lawsuit leveling two claims and causes of action. First, with respect to landmark, Steven J., asserts that the defendant's failure to pay this claim constitutes a breach of this insurance contract in which Steven J., has a beneficial interest as a lienholder on the insured property. (Id., ¶¶16-27.) The amended complaint goes on in Count II to allege that Engle Martin, the claims adjuster, tortiously interfered with this insurance contract by investigating the claim and submitting its report to Landmark, stating that the investigation indicated that the claim entailed pre-exiting damage to the insured premises, a finding that Steven J., discounts as outrageous.

Engle Martin has now moved to dismiss this tortious interference with contract claim, (Doc. 24.) arguing that the complaint fails to state a claim upon which relief may be granted. This motion is fully briefed by the parties, (Docs. 25, 27,[1] and 28.), and is, therefore, ripe for resolution. For the reasons set forth below it is recommended that the motion to dismiss be granted, and the tortious interference with contract claim against Engle Martin be dismissed.

---

[1]For its part, the plaintiff's response in opposition to this motion to dismiss is notably in its brevity, and consists of little more than an admonition that there is "a powerful resumption [sic] against dismissing" a complaint (Doc. 27-3, p.2.); coupled with the exhortation that "[t]his is tortuous [sic] interference", (id., p. 1); and the admonition: "Let's get on with the merits of the case." (Id., p.3.)

### III. Discussion

### A. Motion to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks

omitted) (quoting Twombly, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. See Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937; Twombly, 550 U.S. at 555–57, 127 S.Ct. 1955; Burtch, 662 F.3d at 220–21." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012). As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document

integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. This Tortious Interference With Contract Claim Fails as a Matter of Law

As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). Under Pennsylvania law, "the elements of a cause of action for intentional interference with an existing contractual relation [are as follows:]

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct."

The York Grp., Inc. v. Yorktowne Caskets, Inc., 2007 PA Super 114, 924 A.2d 1234,

1245 (Pa. Super. Ct. 2007), citing Reading Radio, Inc. v. Fink, 833 A.2d 199, 211 (Pa.Super.2003) (quoting Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa.Super.1997)).

Here, Engle Martin argues that the well-pleaded facts alleged by Steven J., Inc., in its amended complaint fail to state a claim of tortious interference with a contractual relationship on at least two scores. First, the defendant contends that this tort claim requires "purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring." Id. Fairly construed Engle Martin argues that this amended complaint alleges a dispute regarding the correctness of the adjuster's resolution of this claim, but describes a dispute which falls short of the intentional, purposeful, harmful conduct required by Pennsylvania law.

In addition, Engle Martin insists that this tortious interference claim runs afoul of another requirement prescribed by Pennsylvania law for such claims: a showing of " the absence of privilege or justification on the part of the defendant." Id. Quite the contrary, Engle Martin contend that the well-pleaded facts in this amended complaint, which alleges that Engle Martin was retained by Landmark to evaluate this claim, and did just that–it evaluated the claim and found it to be wanting– described a relationship between Landmark and Engle Martin in which Engle Martin's actions

were privileged and justified since they were required by its contractual engagement with Landmark to review this claim. In this setting, where Engle Martin has contractually agreed to review an insurance claim as an insurance adjuster, the defendant argues that it cannot be said that Engle Martin acted without justification, even if Steven J., may strongly contest the ultimate findings which it made regarding that insurance claim.

While Steven J., has responded to this motion by insisting without benefit of supporting legal authority that"[t]his is tortuous [sic] interference", ( Doc. 27-3, p. 1.); and urging:  "Let's get on with the merits of the case," (Id., p.3), upon consideration we find merit to Engle Martin's argument that the simple act of a claims adjuster investigating and opining upon an insurance claim at the request of an insurance company cannot, without further well-pleaded facts, does not rise to the level of tortious interference with a contract since this conduct does not entail "purposeful action on the part of the defendant, specifically intended to harm the existing relation, [undertaken in] the absence of privilege or justification." The York Grp., Inc. v. Yorktowne Caskets, Inc., 2007 PA Super 114, 924 A.2d 1234, 1245 (Pa. Super. Ct. 2007).

Quite the contrary, we note that other federal courts, construing the elements of similar tort claims made by insureds against claims adjusters have frequently

rejected such tortious interference claims as a matter of law, noting that this conduct is not tortious since the adjuster's "job was to investigate and report to [the insurance company] on the cause of loss," Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 731 (8th Cir. 2011). See e.g., Columbus v. United Pac. Ins. Co., 641 F. Supp. 707, 708 (S.D. Miss. 1986) aff'd, 833 F.2d 1007 (5th Cir. 1987); Columbus v. Reliance Ins. Co., 626 F. Supp. 1147, 1148 (S.D. Miss. 1986). See also, Joseph P. Caulfield & Associates, Inc. v. Litho Prods., Inc., 155 F.3d 883, 891 (7th Cir. 1998)(no tortious interference claim by adjuster against insured and insurance company arising out of statements and actions expressing doubts about quality of adjuster's work). These cases all recognize that it is the nature of an independent claims adjuster's duties to investigate and evaluate claims made under a contract between an insured and an insurance company. This task, which the adjuster is itself contractually obliged to undertake, may on occasion lead to results which the insured believes are misguided, uninformed and wrong. In such instances, the insured may pursue relief through litigation under the policy itself. However, in the absence of further, significant well-pleaded facts detailing some other purposeful misconduct by the adjuster which falls outside its privileged contractual relationship with the insurance company, the actions of the adjuster recommending denial of a claim, standing alone, does not constitute the tort of intentional interference with a

contractual relationship.  See e.g., Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 731 (8th Cir. 2011); Columbus v. United Pac. Ins. Co., 641 F. Supp. 707, 708 (S.D. Miss. 1986) aff'd, 833 F.2d 1007 (5th Cir. 1987); Columbus v. Reliance Ins. Co., 626 F. Supp. 1147, 1148 (S.D. Miss. 1986).  Since Steven J., Inc.'s amended complaint does not contain such well-pleaded allegations of facts which would establish purposeful misconduct which is not privileged or otherwise justified in an insurance claims adjustment context, the amended complaint fails as a matter of law and this intentional interference with contract claim set forth in Count II of the amended complaint should be dismissed.

**IV.     Recommendation**

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT Engle Martin's Motion to Dismiss (Doc. 24.)  be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of August, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
